UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

EMERSON ENTERPRISES, LLC,

                            Plaintiff,        No. 03-CV-6530 CJS

      -vs-

                                      DECISION AND ORDER

KENNETH CROSBY- NEW YORK, INC.,
KENNETH CROSBY CO., INC., T.T. BEARING
CO., INC., ROCHESTER TOOL CORP.,
JASCO TOOLS, INC., JAYNE C. SUMMERS,
CLARK WITBECK, INC., BRIAN J. CAIN,
BARBARA GOODRICH as Executor of the
Estate of VERNON GOODRICH, DEAN BRODIE,
CURTIS S. KLING, THE HARTFORD INSURANCE
CO., CONTINENTAL INSURANCE COMPANY,
GLENS FALLS INSURANCE CO., FIREMEN'S
INSURANCE COMPANY OF NEWARK, NJ,
THE TRAVELERS INDEMNITY CO., PG
INSURANCE CO. OF NEW YORK, JOHN DOE
CORPORATIONS, JOHN DOES, and
JOHN DOE INSURANCE COMPANIES,

                            Defendants.

_____

APPEARANCES

For plaintiff:                     Alan J. Knauf, Esq.
                                 Knauf Shaw, LLP
                                 975 Crossroads Building, 2 State Street
                                 Rochester, New York 14614

For defendant Dean Brodie:       Miles P. Zatkowsky, Esq.
                                 Dutcher & Zatkowsky
                                 150 Allens Creek Road
                                 Rochester, New York 14618

For defendant Barbara Goodrich:   Leslie M. Senglaub, Esq.
                                 Harter, Secrest & Emery LLP
                                 1600 Bausch & Lomb Place
                                 Rochester, New York 14604

1

For defendant PG Insurance Co.:          Elizabeth M. Bergen, Esq.
                                         Gibson, McAskill & Crosby, LLP
                                         69 Delaware Avenue, Suite 900
                                         Buffalo, New York 14202

For defendants Glens Falls
Insurance Co., Continental Insurance
Co. and Firemens' Insurance Co.:         Robert M. Kaplan, Esq.
                                         Ferber Frost Chan & Essner, LLP
                                         530 Fifth Avenue
                                         New York, New York 10036-5101

For defendants Kenneth Crosby
Acquisition Corp., Kenneth Crosby
Co., Inc., Kenneth Crosby-New York,
Inc., T.T. Bearing Co., Inc.,Rochester
Tool Corp., Jasco Tools, Inc., and
Jayne C. Summers:                        Alexander Geiger, Esq.
                                         David Rothenberg, Esq.
                                         Geiger and Rothenberg, LLP
                                         45 Exchange Street, Suite 800
                                         Rochester, New York 14614

For defendant Travelers:                 Patricia C. Dee-Bilka, Esq.
                                         Lazare Potter Giakovas & Kranjac LLP
                                         950 Third Avenue, 15th Floor
                                         New York, New York 10022

## INTRODUCTION

This is an action pursuant to, *inter alia*, the Comprehensive Environmental

Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601, *et seq.*, the

New York Environmental Conservation Law ("ECL"), and New York Navigation Law.

Now before the Court are a number of motions and cross-motions for summary

judgment.  For the reasons that follow, the applications by PG Insurance Co. ("PG"),

Glens Falls Insurance Co. ("Glens Falls"), Continental Insurance Co. ("Continental"),

and Firemen's Insurance Co. of Newark, NJ ("Firemen's")  [#134] [#139] [#143][#146]

are GRANTED, and the applications by plaintiff Emerson Enterprises, LLC ("plaintiff") [#122], Dean Brodie ("Brodie") [#112], and Barbara Goodrich as Executor of the Estate of Vernon Goodrich ("Goodrich") [#116] are DENIED.

BACKGROUND

Unless otherwise noted, the following are the undisputed facts of this case.  This action involves environmental contamination of a parcel of land known as 640 Trolley Drive ("640 Trolley Drive," "the property," or "the site") in the Town of Gates, County of Monroe and State of New York.  According to the complaint in this action, "since about 1948, the property has been owned by members of the Ciufo family or business entities that they controlled." Second Amended Complaint ("Complaint") ¶ 47.  One of these business entities was a partnership known as Trolley Park Associates.  Plaintiff is a New York limited liability company formed on July 28, 1998.  For some unspecified time prior to that date, plaintiff was a general partnership, and was the managing partner of Trolley Park Associates.  According to the complaint, "[o]n February 8, 1989, plaintiff became *an* owner of the Property." *Id*. at ¶ 52. (emphasis added).  On December 21, 1989, Trolley Park Associates dissolved and assigned most or all of its assets to plaintiff.

Prior to 1960, the property was vacant land.  In or about 1960, a 12,300 square-foot masonry structure was constructed on 640 Trolley Drive, and since that time the owners have leased out the premises for industrial purposes.  Defendant Clark Witbeck, Inc. ("Clark Witbeck") leased the property from the early 1960s until 1992. Clark Witbeck's business involved distributing industrial tools and supplies, including abrasives, cutting tools, fasteners, and other products.  In 1992, defendant Kenneth

3

Crosby Acquisition Corp. ("Kenneth Crosby Acquisition") purchased Clark Witbeck's assets, and from 1992 until 2000, Kenneth Crosby Acquisition leased the property from plaintiff.  Kenneth Crosby Acquisition's CEO, defendant Jayne C. Summers ("Summers"), personally guaranteed the Kenneth Crosby Acquisition lease.  During the period between 1992 and 2000, Kenneth Crosby Acquisition continued the Clark Witbeck business, with many key employees doing the same jobs and similar working conditions and processes.  During that same period, Summers operated other businesses on the premises, including defendants Rochester Tool Corp. ("Rochester Tool")  and T.T. Bearing Co., Inc. ("T.T. Bearing.").  The complaint further alleges that defendant JascoTools, Inc. ("Jasco") conducted operations on the premises.  Kenneth Crosby Acquisition's lease term ended on December 30, 2000, however, at some time prior to October 2000, Kenneth Crosby Acquisition, Rochester Tool, T.T. Bearing, and Jasco vacated the premises.

Thereafter, plaintiff leased the premises to an entity known as AAA Environmental, Inc. ("AAA").  On October 27, 2000, AAA was clearing brush from around the building when it discovered a dry well containing substances later determined to include polychlorinated biphenyls ("PCBs"), 1,1,1-trichloroethane ("TCA"), and other volatile organic compounds ("VOCs"), semi-volatile organic compounds ("SVOCs"), acetone, and petroleum (including xylene and other petroleum constituents.).

Upon being notified of the contamination, the New York Department of Environmental Conservation ("NYDEC") listed the property on the state's Registry of Inactive Hazardous Waste Disposal Sites, and arranged for the dry well to be removed

4

in January 2002.  The complaint alleges that the NYDEC plans to conduct further investigation of the property, and if necessary further remedial work.  Plaintiff further contends that the NYDEC had demanded that plaintiff pay for the investigation and remediation of the contamination at the property.

On October 27, 2003, plaintiff commenced this action.  In addition to suing Clark Witbeck, Kenneth Crosby Acquisition Corp., Summers, Rochester Tool, T.T. Bearing, and Jasco, plaintiff sued various companies allegedly associated with Kenneth Crosby Acquisition, including Kenneth Crosby Co., Inc., Kenneth Crosby- New York, Inc., and Jasco Tools.  Plaintiff also sued the former owners of Clark Witbeck, including Brian J. Cain, Curtis S. Kling, Goodrich, and Brodie.  Plaintiff additionally sued various insurance companies, including Glens Falls, PG, Continental, and Firemen's.

The undersigned referred the case to the Honorable Marian W. Payson, United States Magistrate Judge, for all non-dispositive pre-trial matters.  Following a scheduling conference, Magistrate Judge Payson set deadlines for discovery "regarding issues relating to insurance coverage." Scheduling Order [#53].  The scheduling order specifically provided that the parties could seek discovery on insurance coverage issues by way of requests for production of documents and written interrogatories.  Magistrate Judge Payson further scheduled a settlement conference to take place following the completion of that discovery, and directed that following the settlement conference, if necessary, she would issue a further scheduling order for any remaining discovery. *Id*. Subsequently, the parties requested that Magistrate Judge Payson cancel the settlement conference, and instead schedule a status conference.  At that time, counsel, in a joint letter to the Court, stated that the issue of the insurers' duty to defend

was "ripe for briefing and argument." Letter Order [#74], p. 1.[1]  Subsequently,

Magistrate Judge Payson set a deadline for filing summary judgment motions regarding

the insurance companies' duty to defend. *See*, Order [#77].

Magistrate Judge Payson subsequently granted plaintiff leave to file a second

amended complaint, and extended the deadline for filing motions on the issue of the

insurers' duty to defend.  On June 2, 2005, plaintiff filed and served the Second

Amended Complaint [#100], which is now the operative complaint in this action.  The

Second Amended Complaint purports to allege seventeen separate causes of action: 1)

a claim that all defendants, except the insurance company defendants, are strictly liable

for cleanup costs pursuant to CERCLA, 42 U.S.C. § 9607(a); 2) a claim that all

defendants, except the insurance company defendants, Kling, and the John Doe

defendants, are liable to remedy and abate the alleged contamination, pursuant to 42

U.S.C. § 6972(a)(1)(B); 3) a claim for breach of contract against Kenneth Crosby NY

and Summers; 4) a claim for breach of contract against Clark Witbeck; 5) a claim that

the Kenneth Crosby corporations, Clark Witbeck defendants, and John Doe

defendants, are strictly liable for damages under New York State Environmental

Conservation Law ("ECL") Article 37; 6) a claim for negligence against the Kenneth

Crosby corporations, Clark Witbeck defendants, and John Doe defendants; 7) a claim

that the Kenneth Crosby corporations, Clark Witbeck defendants, and John Doe

defendants are strictly liable for cleanup costs; 8) a claim for public nuisance against

the Kenneth Crosby corporations, Clark Witbeck defendants, and John Doe

---

[1]On the other hand, counsel stated that additional discovery was needed on the issue of the insurance companies' possible duty to indemnify. *Id*. at p. 2.

defendants; 9) a claim for waste against the Kenneth Crosby corporations, Clark

Witbeck defendants, and John Doe defendants; 10) a claim for equitable or implied

indemnification against the Kenneth Crosby corporations, Clark Witbeck defendants,

and John Doe defendants; 11) a claim for restitution against the Kenneth Crosby

corporations, Clark Witbeck defendants, and John Doe defendants; 12) a claim for

trespass against the Kenneth Crosby corporations, Clark Witbeck defendants, and John

Doe defendants; 13) a claim for private nuisance against the Kenneth Crosby

corporations, Clark Witbeck defendants, and John Doe defendants; 14) a claim for strict

liability under the Navigation Law against the Kenneth Crosby corporations, Clark

Witbeck defendants, and John Doe defendants; 15) a claim for indemnification and

contribution under the Navigation Law against the Kenneth Crosby corporations, Clark

Witbeck defendants, and John Doe defendants; 16) a claim for a declaratory judgment

that the defendant insurance companies have an obligation to defend and indemnifiy;

and 17) a claim for strict liability under Navigation Law § 190 and/or Navigation Law §

176(8) against the insurance company defendants.

The complaint contends that the contamination "was caused by discharges and

releases . . . including the dumping . . . of contaminants into a dry well . . . located near

the back door of the building on the property." Complaint ¶ 2.  More specifically, the

complaint alleges that "[e]mployees of Clark Witbeck dumped contaminants in the dry

well, including PCBs, TCA and other VOCs, SVOCs, acetone, and petroleum (including

xylene or other petroleum constituents), throughout its occupation of the property, upon

information and belief beginning in the 1960s through 1992, or during part of that time."

Id. at ¶ 74. The complaint further alleges that Clark Witbeck actively concealed the

7

contaminated drywell. *Id*. at ¶ 71.  However, in addition to these allegations of

intentional dumping, the complaint contains the following statement: "Upon information

and belief, some or all of the releases occurred in a sudden and accidental manner." *Id*.

at ¶ 89.  The defendants subsequently asserted counterclaims and cross-claims for,

*inter alia*, indemnification and contribution.[2]

The parties then filed seven separate motions for summary judgment:

1) a summary judgment motion by Brodie against Glens Falls,
Continental, and Firemen's [#112], in which Brodie seeks a declaratory
judgment that the insurers have a duty to defend him in this case.  Brodie
alleges that these insurers insured the Clark Witbeck corporation between
May 1981 and September 1987, when Brodie was an officer (President)
and shareholder of Clark Witbeck.  Brodie contends that the insurance
policies cover him, since he was an officer of the insured company.

2) a summary judgment motion by Goodrich against Glens Falls [#116], in
which she seeks a declaratory judgment that Glens Falls has a duty to
defend her in this case.  Goodrich alleges that Glens Falls insured the
Clark Witbeck corporation between 1981 and 1987, when the late Vernon
Goodrich was an officer, director, and shareholder of Clark Witbeck.
Goodrich contends that the insurance policy covers Mr. Goodrich's Estate,
since he was an officer of the insured company.

3) a summary judgment motion by plaintiff against Glens Falls,
Continental, Firemen's, and PG [#122], in which plaintiff seeks a
declaratory judgment that these insurance companies have a duty to
defend plaintiff against the various counterclaims in this action.  Plaintiff
alleges that Glens Falls provided insurance coverage between 1983 and
1986; that Continental provided insurance coverage between 1983 and
1984, as well as 1987 to 1988; that Firemen's provided insurance
coverage between 1986 and 1987; and that PG provided coverage
between 1990 and 1992.  Although these policies were actually issued to
Clark Witbeck, plaintiff claims that it was listed on the policies as an
additional insured.

---

[2]The Second Amended Complaint, at paragraph 76, also contains an allegation regarding
contamination that occurred in 1994, which involved leakage from a dumpster.  However, Glens Falls,
Continental, and Firemen's did not insure the parties herein at that time, (See, Second Amended
Complaint ¶ ¶ 34, 36, and 38) nor has any evidence been introduced that this type of spill occurred while
these insurers' policies were in effect.

4) a summary judgment motion by PG against plaintiff [#134], in which PG seeks a declaratory judgment that it has no duty to defend plaintiff.  PG contends that it has no duty to defendant plaintiff, because its policy, unlike those allegedly issued by the other insurers, does not cover *any* pollution liability on the insured's premises.  That is, while the other insurers' policies cover pollution as long as it was "sudden and accidental," PG's pollution exclusion excludes all pollution, even if it was sudden and accidental.

5) a summary judgment motion by Glens Falls, Continental, and Firemen's against plaintiff [#139], in which the insurance companies seek a declaratory judgment that they have no duty to defend plaintiff.  The insurance companies contend that plaintiff has failed to come forward with any evidentiary proof that they insured Clark Witbeck or plaintiff, and that even if they did provide insurance, the "pollution exclusion" in their policies applies because the pollution here was not "sudden and accidental."

6) a summary judgment motion by Glens Falls against Brodie [#143], in which Glens Falls seeks a declaratory judgment that it has no duty to defend Brodie.  Glens Falls contends that Brodie was never insured by Glens Falls, and that even if he was insured, the "Pollution Exclusion" applies, because the pollution was not "sudden and accidental."

7) a summary judgment motion by Glens Falls against Goodrich [#146], seeking a declaratory judgment that Glens Falls has no duty to defend. Glens falls contends that the late Mr. Goodrich was never insured by Glens Falls, and that even if he was insured, the "Pollution Exclusion" applies, because the pollution was not "sudden and accidental."

Counsel for the parties appeared before the undersigned for oral argument of the motions on August 4, 2005.  At that time, counsel agreed that defendant PG is entitled to summary judgment on the issue of duty to defend.  The Court has now thoroughly considered the parties' submissions and the arguments of counsel.

## ANALYSIS

The standard for granting summary judgment is well established.  Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

there is no genuine issue as to any material fact and that the moving party is entitled to

a judgment as a matter of law." Fed.R.Civ.P. 56(c).   A party seeking summary judgment

bears the burden of establishing that no genuine issue of material fact exists. *See,*

*Adickes v. S.H. Kress & Co*., 398 U.S. 144, 157 (1970).   "[T]he movant must make a

prima facie showing that the standard for obtaining summary judgment has been

satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.).   "In

moving for summary judgment against a party who will bear the ultimate burden of proof

at trial, the movant may satisfy this burden by pointing to an absence of evidence to

support an essential element of the nonmoving party's claim." *Gummo v. Village of*

*Depew*, 75 F.3d 98, 107 (2d Cir. 1996)(*citing Celotex Corp. v. Catrett*, 477 U.S. 317,

322-23 (1986)), *cert denied*, 517 U.S. 1190 (1996).

The burden then shifts to the non-moving party to demonstrate "specific facts

showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e);   *Anderson v.*

*Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986).   To do this, the non-moving party must

present evidence sufficient to support a jury verdict in its favor. *Anderson*, 477 U.S. at

249; *see also*, FED. R. CIV. P. 56(e)("When a motion for summary judgment is made

and supported as provided in this rule, and adverse party may not rest upon the mere

allegations or denials of the adverse party's pleading, but the adverse party's response,

by affidavits or as otherwise provided in this rule, must set forth specific facts showing

that there is a genuine issue for trial.").   Summary judgment is appropriate only where,

"after drawing all reasonable inferences in favor of the party against whom summary

judgment is sought, no reasonable trier of fact could find in favor of the non-moving

party." *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993).  The parties may only carry their respective burdens by producing evidentiary proof in admissible form. FED. R. CIV. P. 56(e).  The underlying facts contained in affidavits, attached exhibits, and depositions, must be viewed in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

When a party is unable to produce affidavits in opposition to a summary judgment motion, it may make an application pursuant to Rule 56(f), which states:

> **When Affidavits are Unavailable**.  Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

FED. R. CIV. P. 56(f).  The requirements for obtaining relief under Rule 56(f) are as follows:

> [A] party resisting summary judgment on the ground that it needs discovery in order to defeat the motion must submit an affidavit showing '(1) what facts are sought [to resist the motion] and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts.

*Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 303 (2d Cir. 2003) (citations omitted).

At the outset, the Court finds that plaintiff is not entitled to additional discovery concerning the subject motions.  Plaintiff's counsel stated during oral argument that plaintiff needs the opportunity for additional discovery regarding whether the environmental contamination was "sudden and accidental."  When asked if plaintiff had

made a request under Rule 56(f), counsel directed the Court's attention to ¶ 60 of the

affidavit of Phillip C. Ciufo, Jr. [#154], which states only that, "[i]f the existence of the

CNA policies or the status of the Corporation as an additional insured is going to be

questioned, then plaintiff should be granted a continuance, pursuant to FRCP Rule

56(f), to conduct these depositions and any additional discovery that may prove

necessary."  In addition to saying nothing about needing additional discovery

concerning whether the contamination was "sudden and accidental," neither the Ciufio

affidavit nor anything else that plaintiff filed satisfies Rule 56(f). *See, e.g.*, Plaintiff's

Reply Memo of Law [#154-2], pp. 8-9.[3]  Moreover, plaintiff made no objection to the

joint submission by counsel stating that the issue of the insurers' duty to defend was

"ripe for briefing and argument."  Accordingly, plaintiff's application for additional

discovery on the issue of the insurance companies' duty to defend is denied.

The Court will now consider the various summary judgment motions.  First, it is

now undisputed that PG is entitled to summary judgment under the terms of its

insurance policy.   Accordingly, plaintiff's summary judgment motion against PG is

withdrawn and PG's application for summary judgment on the issue of duty to defend is

granted.

The remaining motions all concern issues relating to whether Glens Falls,

---

[3]Despite having made no objection to the representation that the duty to defend issue was ripe for adjudication, and despite having moved for summary judgment, plaintiff now states that "it would be inappropriate to grant summary judgment without allowing plaintiffs an opportunity for full discovery, including depositions." *Id*.  Plaintiff suggests that it would depose employees of the insurance companies. *Id*.  However, while such depositions might produce evidence regarding whether or not plaintiff was insured, they would not provide information as to whether the contamination was sudden and accidental.

Continental, and/or Firemen's have a duty to defend plaintiff, Brodie, and/or Goodrich.[4]

The law concerning an insurer's duty to defend is well settled.  Generally,

> an insurer's duty to defend is derived from the allegations of the complaint
> and the terms of the policy.  Where the complaint contains allegations that
> bring the claim even potentially within the policy's coverage, the insurer is
> obligated to defend.  There is no duty to defend, however, if the insurer
> establishes that the allegations of the complaint cast that pleading solely
> and entirely within the policy exclusions, and, further, that the allegations,
> in toto, are subject to no other interpretation.

*Ogden Corp. v. Travelers Indem. Co.*, 924 F.2d 39, 41 (2d Cir. 1991) (citations and

internal quotation marks omitted).  However, in that regard, "[i]n determining whether a

policy exclusion applies, the facts alleged in the complaint, *rather than the conclusory*

*assertions found therein*, are controlling." *Willard v. Preferred Mut. Ins. Co.*, 242 A.D.2d

960, 960, 662 N.Y.S.2d 342, 343  (4th Dept. 1997)(emphasis added).

That is not to say, however, that an insurer's duty to defend is determined solely

by the factual allegations of the complaint.  For example, even where the complaint

does not contain factual allegations establishing a duty to defend, an insurer must

provide a defense "when it has actual knowledge of facts establishing a reasonable

possibility of coverage." *Fitzpatrick v. American Honda Motor Co.*, 78 N.Y.2d 61, 67,

571 N.Y.S.2d 672, 675 (1991).  Consequently, on a motion for summary judgment, the

insured may submit evidence extrinsic to the complaint to establish a duty to defend.

*Petr-All Petroleum Corp. v. Fireman's Ins. Co. of Newark, New Jersey*, 188 A.D.2d. 139,

142,  593 N.Y.S.2d 693, 695 (4th Dept. 1993) ("It is now settled law that an insurer may

---

[4]Since, as discussed below, the Court finds that Glens Falls, Continental, and Firemen's have no
duty to defend under the policies, the Court will not consider whether in fact plaintiff, Brodie, and Goodrich
were insureds, since even assuming that they were, they would not be entitled to the relief they seek.

not use an inartfully pleaded complaint as a shield to liability and that the court, in

deciding whether an insurer has a duty to defend, may consider extrinsic facts

submitted by the insured to show that coverage under a policy may exist."); *American*

*Ins. Co. v. Fairchild Indus., Inc.*, 852 F.Supp. 1173, 1182 n. 16 (E.D.N.Y. 1994),

*affirmed*, 56 F.3d 435 (2d Cir. 1995).

Here, the policies allegedly[5] issued by Glens Falls, Continental, and Firemen's

exclude coverage for environmental contamination, unless it was "sudden and

accidental."  Specifically, the policies state:

> This insurance does not apply:
> ***
> to bodily injury or property damage arising out of the discharge, dispersal,
> release, or escape of smoke, vapors, soot, fumes, acid, alkalis, toxic
> chemicals, liquids or gases, waste materials or other irritants,
> contaminants, or pollutants into or upon land, the atmosphere or any
> water course or body of water, but this exclusion does not apply if such
> discharge, dispersal, release or escape is sudden and accidental[.]

Document [#129-9].  The terms "sudden" and "accidental" in this context have well-

settled meanings.  "For a release or discharge [of pollutants] to be sudden, it must

occur over a short period of time." *Ogden Corp. v. Travelers Indem. Co.*, 924 F.2d at 42

(internal quotation marks omitted).  Contamination is not sudden when it occurs over a

period of years. *Id.* ("[T]he allegation of continuous discharge of pollutants from 1950

through 1983 cannot be interpreted as an allegation of sudden discharge.").

On the other hand, "the contamination of a site is accidental when the conduct,

---

[5]Plaintiff, Brodie, and Goodrich all contend, based upon documents produced by the insurance companies in discovery, that policies issued by Glens Falls, Continental, and Firemen's contained the policy language discussed herein.  The insurance companies contend that plaintiffs have not demonstrated that the insurance companies actually issued policies covering plaintiff, Brodie, or Goodrich. However, the insurance companies agree that, if they did, the policies contained the aforementioned language, and particularly the pollution exclusion with the "sudden and accidental" exception.

the activity resulting in pollution, was unintended." *Ogden Corp. v. Travelers Indem. Co.*, 924 F.2d at 42.  Consequently, contamination is not accidental when the discharge is intentional. *Northville Indus. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 89 N.Y.2d 621, 631, 657 N.Y.S.2d 564, 567 (1997) ("[T]he term 'accidental' excludes any intentional discharge of a pollutant from qualifying for the exception."); *Technicon Elec. Corp. v. American Home Assurance Co.*, 74 N.Y.2d 66, 544 N.Y.S.2d 531 (1989) (Holding that the intentional dumping of pollutants is not 'accidental' within the meaning of the pollution exclusion); *see also, Ogden Corp. v. Travelers Indem. Co.*, 924 F.2d at 42 ("It is doubtful whether the continuous discharge of pollutants resulting from the purposeful operation of a scrapyard can be construed as accidental.").  Moreover, the exclusion applies only when the contamination is *both* sudden and accidental. *Id.* ("The sudden and accidental exception to the pollution exclusion clause applies only when the discharge is both 'sudden and accidental.'").

In the instant case, the complaint alleges that Clark Witbeck's employees intentionally dumped pollutants into a concealed dry well over a period of approximately thirty years.  The Court finds, as a matter of law based on the record in this action, that this alleged contamination was not "sudden."  For this reason alone, Glens Falls, Continental, and Firemens' have no duty to defend or indemnify.  Additionally, however, the Court finds, based on the factual allegations in the complaint, that the alleged contamination was also not "accidental."  Although plaintiff included in the complaint an allegation that the contamination was "sudden and accidental," this conclusory assertion is insufficient to trigger a duty to defend where the specific factual allegations

15

clearly allege that the contamination was intentional.  Notably, none of the persons who were involved with the property during the years in question, such as plaintiff, Brodie, or Goodrich, has come forward with any proof that the pollution was sudden and accidental.  Nor, do the counterclaims make any factual allegations of sudden and accidental contamination.[6]

CONCLUSION

The applications by PG, Glens Falls, Continental, and Firemen's [#134] [#139] [#143][#146] are GRANTED, and the applications by plaintiff [#122], Brodie [#112], and Goodrich [#116] are DENIED.

So Ordered.

Dated: Rochester, New York
        August 9, 2005

ENTER:


/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge

---

[6]Plaintiff admits that "[t]he counterclaims merely refer to the language in plaintiff's complaint[ ]." Plaintiff's Reply Memo of Law [#154-2], p. 10.

16