UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

EMERSON ENTERPRISES, LLC,

         Plaintiff,    No. 03-CV-6530 CJS

 -vs-

                 DECISION AND ORDER

KENNETH CROSBY- NEW YORK, INC.,
KENNETH CROSBY CO., INC., T.T. BEARING
CO., INC., ROCHESTER TOOL CORP.,
JASCO TOOLS, INC., JAYNE C. SUMMERS,
CLARK WITBECK, INC., BRIAN J. CAIN,
BARBARA GOODRICH as Executor of the
Estate of VERNON GOODRICH, DEAN BRODIE,
CURTIS S. KLING, THE HARTFORD INSURANCE
CO., CONTINENTAL INSURANCE COMPANY,
GLENS FALLS INSURANCE CO., FIREMEN'S
INSURANCE COMPANY OF NEWARK, NJ,
THE TRAVELERS INDEMNITY CO., PG
INSURANCE CO. OF NEW YORK, JOHN DOE
CORPORATIONS, JOHN DOES, and
JOHN DOE INSURANCE COMPANIES,

              Defendants.
_____

APPEARANCES

| | |
|---|---|
| For plaintiff: | Alan J. Knauf, Esq.<br>Knauf Shaw, LLP<br>975 Crossroads Building, 2 State Street<br>Rochester, New York 14614 |
| For defendant Dean Brodie: | Miles P. Zatkowsky, Esq.<br>Dutcher & Zatkowsky<br>150 Allens Creek Road<br>Rochester, New York 14618<br>Rochester, New York 14604 |
| For defendants Glens Falls<br>Insurance Co., Continental Insurance<br>Co. and Firemens' Insurance Co.: | Robert M. Kaplan, Esq.<br>Ferber Frost Chan & Essner, LLP<br>530 Fifth Avenue<br>New York, New York 10036-5101 |

1

For defendant Hartford
Accident & Indemnity Co.:			Susan E. Quinn, Esq.
						Morrison & Foerster LLP
						1290 Avenue of the Americas
						New York, New York 10104-0050

INTRODUCTION

This is an action pursuant to, *inter alia*, the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601, *et seq.*, the New York Environmental Conservation Law ("ECL"), and New York Navigation Law. Now before the Court is plaintiff's motion [#166], pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, for reconsideration of that portion of the Court's Decision and Order [#165] which granted summary judgment to defendants Glens Falls Insurance Co. ("Glens Falls"), Continental Insurance Co. ("Continental"), and Firemen's Insurance Co. of Newark, NJ ("Firemen's"), finding that they did not have a "duty to defend plaintiff from claims made by the New York State Department of Environmental Conservation ["NYDEC"]." For the reasons that follow, the application is stayed, to allow plaintiff to conduct further limited discovery.[1]

BACKGROUND

The facts of this case were fully set forth in the Court's previous Decision and Order. For purposes of the subject motion, it is sufficient to note the following. This action involves environmental contamination of a parcel of land, owned by plaintiff, known as 640 Trolley Drive ("640 Trolley Drive," "the property," or "the site") in the Town

---

[1] Plaintiff's application alternatively sought "a continuance for further discovery pursuant to FRCP Rule 56(f)." (Notice of Motion [#166-1]).

2

of Gates, County of Monroe and State of New York.  Prior to 1960, the property was vacant land.  In or about 1960, a 12,300 square-foot masonry structure was constructed on 640 Trolley Drive, and since that time the various owners of the premises, including plaintiff, have leased out the premises for industrial purposes.  Defendant Clark Witbeck, Inc. ("Clark Witbeck") leased the property from the early 1960s until 1992.  Clark Witbeck's business involved distributing industrial tools and supplies, including abrasives, cutting tools, fasteners, and other products.

On or about October 27, 2000, plaintiff's current tenant discovered a dry well on the premises, a few feet behind the building, containing substances later determined to include polychlorinated biphenyls ("PCBs"), 1,1,1-trichloroethane ("TCA"), and other volatile organic compounds ("VOCs"), semi-volatile organic compounds ("SVOCs"), acetone, and petroleum (including xylene and other petroleum constituents.).

Upon being notified of the contamination, the NYDEC listed the property on the state's Registry of Inactive Hazardous Waste Disposal Sites, and arranged for the dry well to be removed in January 2002.  The complaint in this action alleges that the NYDEC plans to conduct further investigation of the property, and if necessary further remedial work.  Plaintiff additionally contends that the NYDEC has demanded that plaintiff pay for the investigation and remediation of the contamination at the property.

More specifically, by letter dated August 28, 2001, the NYDEC informed plaintiff of its intention to investigate and possibly seek costs to clean up the site.  For purposes of the instant motion, the parties agree that this letter is the "underlying complaint," against which plaintiff seeks to have the defendant insurance companies provide a defense.  The letter states, in relevant part:

> As mandated by Section 27-1305 of the Environmental Conservation Law (ECL) . . . [the NYDEC] must investigate all inactive disposal sites suspected or known to contain hazardous wastes. *We have information which leads us to suspect that hazardous waste has been disposed of at the following location: 640 Trolley Boulevard*
>
> ***
>
> This letter constitutes notification of the [NYDEC's] intention to investigate the validity of this suspicion. Should this study confirm that hazardous waste disposal has occurred, this site will be entered into the New York State Registry of Inactive Hazardous Waste Disposal Sites.
>
> ***
>
> If the investigation reveals that hazardous waste disposal at a site poses a significant threat to the environment of public health, the Environmental Conservation Law provides the authority for the [NYDEC] to recover the costs for the investigation from the owners or others deemed to be responsible for the site.

(Emphasis added). Significantly, the ECL defines "disposal" to mean,

> the abandonment, discharge, deposit, injection, dumping, spilling, leaking or placing of any substance so that such substance or any related constituent thereof may enter the environment. Disposal also means the thermal destruction of waste or hazardous waste and the burning of such wastes as fuel for the purpose of recovering useable energy.

NY ECL § 27-1301 (McKinney 2006).

Subsequent to receiving the letter, plaintiff commenced the subject action, seeking, *inter alia*, to have the defendant insurance companies defend and indemnify it in the proceedings brought by the NYDEC. The complaint in this action contends that the contamination identified by the NYDEC "was caused by discharges and releases . . . *including* the dumping . . . of contaminants into a dry well . . . located near the back door of the building on the property." (Complaint ¶ 2) (emphasis added). However, under the heading in the complaint entitled "DISCOVERY OF THE CONTAMINATION," the complaint states that the subject contamination was discovered in "a Dry Well, . . . just a few feet outside the back door of the Building," which the previous owners had

concealed from plaintiff. (Id. ¶ ¶ 64, 71). Moreover, under the heading in the complaint entitled "THE CAUSE OF THE CONTAMINATION," the complaint states that the subject pollution occurred "[a]s the direct and proximate result of the Dumping of Contaminants into the Dry Well." (*Id*. ¶ 72). The complaint further alleges that "[e]mployees of Clark Witbeck dumped contaminants in the dry well, including PCBs, TCA and other VOCs, SVOCs, acetone, and petroleum (including xylene or other petroleum constituents), throughout its occupation of the property, upon information and belief beginning in the 1960s through 1992, or during part of that time." (Id. ¶ 74). In short, the complaint does not identify any contamination besides that found in and around the dry well.

 The parties subsequently filed seven separate motions for summary judgment, including:

>   1) a summary judgment motion by plaintiff against Glens Falls, Continental, and Firemen's [#122], in which plaintiff sought a declaratory judgment that these insurance companies have a duty to defend plaintiff against the various counterclaims in this action.
>
>   2) a summary judgment motion by Glens Falls, Continental, and Firemen's against plaintiff [#139], in which the insurance companies sought a declaratory judgment that they have no duty to defend plaintiff.

By Decision and Order [#165] filed on August 9, 2005, the Court denied plaintiff's motion and granted the motion by Glens Falls, Continental, and Firemen's. In granting summary judgment for the insurers, the Court stated:

>   Here, the policies allegedly² issued by Glens Falls, Continental, and

---

²Plaintiff, Brodie, and Goodrich all contend, based upon documents produced by the insurance companies in discovery, that policies issued by Glens Falls, Continental, and Firemen's contained the policy language discussed herein. The insurance companies contend that plaintiffs have not

5

Firemen's exclude coverage for environmental contamination, unless it was "sudden and accidental." Specifically, the policies state:

> This insurance does not apply:
> ***
> to bodily injury or property damage arising out of the discharge, dispersal, release, or escape of smoke, vapors, soot, fumes, acid, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants, or pollutants into or upon land, the atmosphere or any water course or body of water, but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental[.]

Document [#129-9]. The terms "sudden" and "accidental" in this context have well-settled meanings. "For a release or discharge [of pollutants] to be sudden, it must occur over a short period of time." *Ogden Corp. v. Travelers Indem. Co.*, 924 F.2d at 42 (internal quotation marks omitted). Contamination is not sudden when it occurs over a period of years. *Id.* ("[T]he allegation of continuous discharge of pollutants from 1950 through 1983 cannot be interpreted as an allegation of sudden discharge.").

On the other hand, "the contamination of a site is accidental when the conduct, the activity resulting in pollution, was unintended." *Ogden Corp. v. Travelers Indem. Co.*, 924 F.2d at 42. Consequently, contamination is not accidental when the discharge is intentional. *Northville Indus. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 89 N.Y.2d 621, 631, 657 N.Y.S.2d 564, 567 (1997) ("[T]he term 'accidental' excludes any intentional discharge of a pollutant from qualifying for the exception."); *Technicon Elec. Corp. v. American Home Assurance Co.*, 74 N.Y.2d 66, 544 N.Y.S.2d 531 (1989) (Holding that the intentional dumping of pollutants is not 'accidental' within the meaning of the pollution exclusion); *see also*, *Ogden Corp. v. Travelers Indem. Co.*, 924 F.2d at 42 ("It is doubtful whether the continuous discharge of pollutants resulting from the purposeful operation of a scrapyard can be construed as accidental."). Moreover, the exclusion applies only when the contamination is *both* sudden and accidental. *Id*. ("The sudden and accidental exception to the pollution exclusion clause applies only when the discharge is both 'sudden and accidental.'").

---

demonstrated that the insurance companies actually issued policies covering plaintiff, Brodie, or Goodrich. However, the insurance companies agree that, if they did, the policies contained the aforementioned language, and particularly the pollution exclusion with the "sudden and accidental" exception.

> In the instant case, the complaint alleges that Clark Witbeck's employees intentionally dumped pollutants into a concealed dry well over a period of approximately thirty years. The Court finds, as a matter of law based on the record in this action, that this alleged contamination was not "sudden." For this reason alone, Glens Falls, Continental, and Firemens' have no duty to defend or indemnify.[3]  Additionally, however, the Court finds, based on the factual allegations in the complaint, that the alleged contamination was also not "accidental." Although plaintiff included in the complaint an allegation that the contamination was "sudden and accidental," this conclusory assertion is insufficient to trigger a duty to defend where the specific factual allegations clearly allege that the contamination was intentional. Notably, none of the persons who were involved with the property during the years in question, such as plaintiff, Brodie, or Goodrich, has come forward with any proof that the pollution was sudden and accidental. Nor, do the counterclaims make any factual allegations of sudden and accidental contamination.[4]

(Decision and Order [#165] pp. 14-16) (footnote omitted).

Within days of the Court's Decision and Order, plaintiff served a summons and complaint in this action on another insurer, Hartford Accident and Indemnity Co. ("Hartford"), which, plaintiff alleges, also issued a CGL policy insuring Clark Witbeck and plaintiff.[5]  Plaintiff subsequently filed the subject motion for reconsideration.

As to the reconsideration motion, plaintiff contends that the Court's prior Decision and Order was erroneous in two respects. First, plaintiff contends that the Court erred by stating, at page 15 of the Decision and Order, that defendants had "no duty to defend *or indemnify*" (emphasis added), since defendants had only moved for summary judgment concerning the duty to defend. Second, plaintiff argues that the

---

[3]As will be discussed below, the words "or indemnify" were included in error.

[4]Plaintiff admits that "[t]he counterclaims merely refer to the language in plaintiff's complaint[ ]." Plaintiff's Reply Memo of Law [#154-2], p. 10.

[5]The Court will address Hartford's application for summary judgment, seeking a declaration that it has no duty to defend or indemnify, in a separate Decision and Order.

Court erred by ruling that, under the "pollution exclusion" contained in the subject insurance policies, the defendant insurance companies had no duty to defend plaintiff against claims made by the NYDEC. Plaintiff maintains that this ruling was incorrect, since the NYDEC is seeking to recover from plaintiff for costs associated with the "disposal" of hazardous waste, which term, as defined above, potentially includes releases that were "sudden and accidental." Additionally, plaintiff contends that it has newly-discovered evidence of other pollution at the site, that does not appear to involve the dry well, and that could possibly have occurred in a sudden and accidental manner. Plaintiff does not, however, currently have any evidence to establish how this newly-discovered contamination actually occurred.

Counsel for plaintiff, Brodie[6], Glens Falls, Continental, Firemen's, and Hartford appeared before the undersigned for oral argument on February 8, 2007. The Court has thoroughly considered the parties' submissions and the arguments of counsel.

## ANALYSIS

Plaintiff brings the subject motion pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. It is well settled that when making such a motion,

> the moving party must show that the Court overlooked the controlling decisions or factual matters that were put before the Court in the underlying motion. *Nakano v. Jamie Sadock, Inc.*, No. 98 Civ. 0515, 2000 WL 1010825, at *1 (S.D.N.Y. July 20, 2000); *Walsh v. McGee*, 918 F.Supp. 107, 110 (S.D.N.Y.1996). However, in addition, "[a] court is justified in reconsidering its previous ruling if: (1) there is an intervening change in the controlling law; (2) new evidence not previously available

---

[6]Although Brodie did not file a motion for reconsideration, he submitted a memorandum of law in support of plaintiff's application for reconsideration. The Court notes, however, that Emerson and Brodie are not similarly situated, since Emerson is seeking a defense based on the complaint by the NYDEC, while Brodie is seeking a defense based upon the allegations against him in plaintiff's Second Amended Complaint, which as discussed above, indicate that Clark Witbeck intentionally polluted the property.

> comes to light; or (3) it becomes necessary to remedy a clear error of law or to prevent obvious injustice." See *Nnebe v. Daus*, No. 06 Civ. 4991, 2006 WL 2309588, at *1 (S.D.N.Y. Aug. 7, 2006). New evidence, for these purposes, must be evidence that "could not have been found by due diligence." *Word v. Croce*, No. 01 Civ. 9614, 2004 WL 434038, at *4 (S.D.N.Y. March 9, 2004).
>
> These rules are "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the court." See *Walsh*, 918 F.Supp. at 110. Strict application of these rules also "prevent[s] the practice of a losing party examining a decision and then plugging the gaps of the lost motion with additional matters." *Polar Int'l Brokerage Corp. v. Reeve*, 120 F.Supp.2d 267, 268-69 (S.D.N.Y. 2000). The moving party may not use a motion for reconsideration to advance new facts, arguments, or theories that were available but not previously presented to the Court. See *Graham v. Sullivan*, No. 86 Civ. 163, 2002 WL 31175181, at *2 (S.D.N.Y. Sept. 23, 2002); *Leonard v. Lowe's Home Ctrs., Inc.*, No. 00 Civ. 9585, at *2 (S.D.N.Y. April 12, 2002).

*U.S. v. Billini*, No. 99 CR. 156(JGK), 2006 WL 3457834 at *1 (S.D.N.Y. Nov. 22, 2006). A district court's decision to deny a motion under Rule 59(e) is reviewed on appeal for abuse of discretion. See *Munafo v. Metro. Transp. Auth.*, 381 F.3d 99, 105 (2d Cir. 2004).

In this case, plaintiff first seeks reconsideration, or at least clarification, of a statement contained in the Court's Decision and Order, which stated that Glens Falls, Continental, and Firemen's had "no duty to defend or indemnify." (Decision and Order [#165] at 15). This issue is easily resolved, since the Court's reference to indemnification was inadvertent. As plaintiff correctly notes, the issue of indemnification was not before the Court, but rather, and as the parties agree, the only issue before the Court was whether defendants had a duty to defend plaintiff. Accordingly, plaintiff's motion for reconsideration is granted, to the extent that the words "or indemnify" are stricken from page 15 of the Decision and Order [#165].

9

Next, plaintiff seeks reconsideration of that portion of the Court's Decision and Order [#165] which found that Glens Falls, Continental, and Firemen's had no duty to defend plaintiff from the claim by the NYDEC, because of the pollution exclusion.  As already discussed, plaintiff seeks reconsideration based upon the fact that "disposal" of pollutants, as defined in ECL, § 27-1301(6), could include a "sudden and accidental" act, as well as upon the newly-discovered evidence of pollution.

The law of New York state concerning an insurer's duty to defend, when the pollution exclusion is at issue, is well settled:

> Once an insurer has satisfied its burden of establishing that the underlying complaint alleges damages attributable to the discharge or release of a pollutant into the environment, thereby satisfying the basic requirement for application of the pollution coverage exclusion provision, the burden shifts to the insured to demonstrate a reasonable interpretation of the underlying complaint potentially bringing the claims within the sudden and accidental discharge exception to exclusion of pollution coverage, or to show that extrinsic evidence exists that the discharge was in fact sudden and accidental.  Shifting the burden to establish the exception conforms with an insured's general duty to establish coverage where it would otherwise not exist, provides the insured with an incentive to strive for early detection that it is releasing pollutants into the environment and appropriately places the burden of proof on the party having the better and earlier access to the actual facts and circumstances surrounding the discharge.
>
> In determining whether the underlying complaint can be read as even potentially bringing the claim within the sudden and accidental exception to the exclusion of pollution coverage, a court should not attempt to impose the duty to defend on an insurer through a strained, implausible reading of the complaint that is linguistically conceivable but tortured and unreasonable.  Moreover, a court may look to judicial admissions in the insured's responsive pleadings in the underlying tort action or other formal submissions in the current or underlying litigation to confirm or clarify the nature of the underlying claims.

*Northville Industries Corp. v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 89 N.Y.2d 621, 634, 679 N.E.2d 1044, 1048-1049, 657 N.Y.S.2d 564, 568 - 569 (1997) (citations

and internal quotation marks omitted). Thus, the insured can satisfy its burden either through the underlying complaint, or through extrinsic evidence.

Based upon these applicable principles of law, the Court finds, first, that the insurers have clearly met their burden under *Northville*. Turning, then, to plaintiff's burden, the Court finds that plaintiff cannot satisfy its burden under *Northville* by relying upon the underlying NYDEC complaint. As already mentioned, the underlying complaint alleges only that hazardous waste was "disposed of" at the subject property, which term includes "the abandonment, discharge, deposit, injection, dumping, spilling, leaking or placing of any substance so that such substance or any related constituent thereof may enter the environment," as well as the "thermal destruction of waste or hazardous waste and the burning of such wastes as fuel for the purpose of recovering useable energy." NY ECL § 27-1301. This allegation of "disposal," however, does not suggest that the pollution was either sudden or accidental. Even assuming that terms such as "spilling" and "leaking" suggested an "accidental" discharge, there is nothing within the complaint or statutory definition to suggest suddenness. That is, the definition of "disposal" has no temporal component. Consequently, while the underlying complaint could possibly encompass a sudden and accidental discharge, it does not suggest that the pollution at issue here actually was both sudden and accidental. That being so, the underlying complaint cannot satisfy the insured's burden to show that the exception to the pollution exclusion applies; a contrary holding would essentially impose

no burden on the insured, which is contrary to *Northville*.[7]

Plaintiff maintains, however, that the underlying complaint need not affirmatively suggest a sudden and accidental occurrence. (Pl. Memo [#221] p. 7) ("[W]here the underlying complaint allege[s] the discharge of petroleum, but not the cause or circumstances, there [is] a duty to defend.") (citing *Mahl*). However, in an analogous situation arising under Connecticut law, the Second Circuit rejected that reasoning:

> Stamford urges us to adopt an alternative approach to construction of the "sudden and accidental" exception. Relying upon the reasoning of *New York v. Blank*, 27 F.3d 783, 791 (2d Cir.1994), which applied New York law, Stamford argues that the exception saves its coverage because the claims "do not rule out the possibility" that the contamination was caused by a sudden and accidental event. No doubt, one can conjure up a sudden and accidental event that is not absolutely incompatible with the set of allegations in any complaint. Here, it may be that a carter's truck suddenly overturned at the site and accidentally spilled its contents here instead of there, or that the pollutants suddenly and accidentally escaped from some containment basin or tank, and reached some of the polluted property by that route. And it may be that such a thing could be alleged; *but no allegation in the third-party complaint or the PRP letters gives one a reason to think that such a thing happened*. . . .  The pollution exclusion would lose all force if it could be defeated by the mere imagining of any sudden accident that is not actually foreclosed by the allegations of the underlying complaint.

*Stamford Wallpaper Co., Inc. v. TIG Ins.*, 138 F.3d 75, 81 (2d Cir. 1998) (emphasis

---

[7]*But see, Mahl Bros. Oil Co., Inc. v. St. Paul Fire & Marine Ins. Co.*, 307 F.Supp.2d 474 (W.D.N.Y. 2004), in which the district court held that a complaint which was ambiguous, but which did not *rule out* a sudden and accidental event, satisfied the first prong of *Northville*. *Id*. at 496 ("[I]n the instant case . . . the complaint filed in the underlying action . . . merely alleges that "[o]n or before November 2, 1993, a discharge of petroleum product contaminated the groundwater and soil . . . . As such, the complaint in the underlying action alleges a discharge that is within the sudden and accidental exception to the pollution exclusion . . . ."). However, as Continental's counsel points out, this aspect of the *Mahl* decision was based on cases that predated *Northville*, and would appear to shift the burden back onto the insurer. (Continental Memo [#219-1] p. 8, 11) ("If an underlying complaint that did not characterize the discharge [as sudden and accidental] was sufficient, standing alone, to create the possibility of sudden and accidental releases, that would in effect reallocate the burdens identified in *Northville*; it would mean, in effect, that the insurer would have the burden of negating the possibility of a sudden and accidental release.").

added) (applying Connecticut law). By the same logic, the Court finds that the NYDEC complaint fails to satisfy the first method of establishing an insured's burden under *Northville* since it does not affirmatively suggest a sudden and accidental occurrence.

In order to satisfy *Northville*, therefore, plaintiff must come forward with extrinsic evidence "that the discharge was in fact sudden and accidental." In this regard, clearly, plaintiff cannot rely upon evidence having to do with the dry well, since plaintiff's judicial admissions indicate that such contamination was intentional. Plaintiff has, however, come forward with newly-discovered evidence of other pollution at the site, consisting of an affidavit from S. Bruce Kohrn ("Kohrn"), Senior Project Manager with GZA GeoEnvironmental of New York. Kohrn's affidavit indicates that pollution was discovered at two additional spots on the premises, and that "the contamination in these additional areas were likely the result of spills that could have occurred between 1977 and 1982, or at another time before discovery of the contamination in 2000." (Kohrn Aff. ¶ ¶ 22-27). Kohrn's affidavit, though, sheds no light on the actual cause of the newly-discovered pollution, and therefore, it cannot satisfy plaintiff's burden under *Northville*. Nonetheless, the discovery of the additional contamination is potentially significant, and consequently, the Court is inclined to allow plaintiff to conduct additional discovery to attempt to determine the cause of the pollution. Accordingly, the Court will stay its decision on the reconsideration motion temporarily, to allow plaintiff to conduct further discovery concerning the cause of the newly-discovered pollution.

CONCLUSION

Plaintiff's application [#166] for reconsideration is granted in part, as follows: The words "or indemnify" are stricken from page 15 the Decision and Order [#165]. As for

the remainder of plaintiff's application, the Court will stay its decision to allow plaintiff to conduct additional discovery regarding the cause of the two additional spots of pollution at the subject site. In that regard, plaintiff shall file and serve any additional evidence in support of its motion for reconsideration on or before **April 15, 2007**. In the event that plaintiff fails to file and serve any additional evidence by that date, or in the event that any such evidence fails to indicate[8] that the newly-discovered pollution was in fact caused by a sudden and accidental event, the Court will deny plaintiff's application for reconsideration.[9]

    So Ordered.

Dated: Rochester, New York
       February 26, 2007

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge

---

[8] *See, Employers Ins. of Wausau v. Duplan Corp.*, No. 94 Civ. 3143 (CSH), 1999 WL 777976 at *9 (S.D.N.Y. Sep. 30, 1999) ("Northville is reasonably construed as standing for the proposition that a metaphysical possibility of a sudden and accidental discharge is not sufficient to invoke the exception; the insured must put forth proof of a sudden and accidental event.")

[9] On the other hand, if plaintiff comes forward with sufficient evidence to carry its burden under *Northville*, the Court will then have to determine whether plaintiff was an insured under the policies issued by Glens Falls, Continental, and Firemen's. (*See*, Decision and Order [#165] p. 13, n. 4) (Since the Court found that the pollution exclusion applied, it did not reach the question of whether plaintiff was an insured.).