UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

EMERSON ENTERPRISES, LLC,

                        Plaintiff,           No. 03-CV-6530 CJS

    -vs-

                                      DECISION AND ORDER

KENNETH CROSBY- NEW YORK, INC.,
KENNETH CROSBY CO., INC., T.T. BEARING
CO., INC., ROCHESTER TOOL CORP.,
JASCO TOOLS, INC., JAYNE C. SUMMERS,
CLARK WITBECK, INC., BRIAN J. CAIN,
BARBARA GOODRICH as Executor of the
Estate of VERNON GOODRICH, DEAN BRODIE,
CURTIS S. KLING, THE HARTFORD INSURANCE
CO., CONTINENTAL INSURANCE COMPANY,
GLENS FALLS INSURANCE CO., FIREMEN'S
INSURANCE COMPANY OF NEWARK, NJ,
THE TRAVELERS INDEMNITY CO., PG
INSURANCE CO. OF NEW YORK, JOHN DOE
CORPORATIONS, JOHN DOES, and
JOHN DOE INSURANCE COMPANIES,

                              Defendants.

_____

APPEARANCES

| | |
|---|---|
| For Plaintiff: | Alan J. Knauf, Esq.<br>Knauf Shaw, LLP<br>975 Crossroads Building, 2 State Street<br>Rochester, New York 14614 |
| For defendant Dean Brodie: | Miles P. Zatkowsky, Esq.<br>Dutcher & Zatkowsky<br>150 Allens Creek Road<br>Rochester, New York 14618<br>Rochester, New York 14604 |
| For defendants Glens Falls<br>Insurance Co., Continental Insurance<br>Co. and Firemens' Insurance Co.: | Robert M. Kaplan, Esq.<br>Ferber Frost Chan & Essner, LLP<br>530 Fifth Avenue<br>New York, New York 10036-5101 |

1

For defendant Hartford
Accident & Indemnity Co.:                 Susan E. Quinn, Esq.
                                          Morrison & Foerster LLP
                                          1290 Avenue of the Americas
                                          New York, New York 10104-0050

## INTRODUCTION

This is an action pursuant to, *inter alia*, the Comprehensive Environmental

Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9601, *et seq.*, the

New York Environmental Conservation Law ("ECL"), and New York Navigation Law.

Now before the Court is Plaintiff's motion [#166], pursuant to Rule 59(e) of the Federal

Rules of Civil Procedure, for reconsideration of that portion of the Court's Decision and

Order [#165] which granted summary judgment to defendants Glens Falls Insurance

Co. ("Glens Falls"), Continental Insurance Co. ("Continental"), and Firemen's Insurance

Co. of Newark, NJ ("Firemen's"), finding that they did not have a "duty to defend

[P]laintiff from claims made by the New York State Department of Environmental

Conservation ["NYDEC"]."   The application for reconsideration is denied.

## BACKGROUND

The facts of this case were fully set forth in the Court's previous Decision and

Order.  For purposes of the subject motion, it is sufficient to note the following.  This

action involves environmental contamination of a parcel of land, owned by Plaintiff,

known as 640 Trolley Drive ("640 Trolley Drive," "the property," or "the site") in the Town

of Gates, County of Monroe and State of New York.  Prior to 1960, the property was

vacant land.  In or about 1960, a 12,300 square-foot masonry structure was constructed

on 640 Trolley Drive, and since that time the various owners of the premises, including

2

Plaintiff, have leased out the premises for industrial purposes.  Defendant Clark

Witbeck, Inc. ("Clark Witbeck") leased the property from the early 1960s until 1992.

Clark Witbeck's business involved distributing industrial tools and supplies, including

abrasives, fasteners, cutting tools, and, most importantly for purposes of this action,

liquid "cutting fluids" or "cooling fluids," containing polychlorinated biphenyls ("PCBs")

and petroleum distillates.

On or about October 27, 2000, long after Clark Witbeck had vacated the

premises, a subsequent tenant was clearing brush behind the building when it

discovered a dry well, which contained a black, oily substance.  Subsequent testing

indicated that the material in the dry well contained PCBs,  1,1,1-trichloroethane

("TCA"), and other volatile organic compounds ("VOCs"), semi-volatile organic

compounds ("SVOCs"), acetone, and petroleum (including xylene and other petroleum

constituents.).

Upon being notified of the contamination, the NYDEC listed the property on the

state's Registry of Inactive Hazardous Waste Disposal Sites, and arranged for the dry

well to be removed in January 2002.  The NYDEC also demanded that Plaintiff pay for

the investigation and remediation of the contamination at the property.  More

specifically, by letter dated August 28, 2001, the NYDEC informed Plaintiff of its

intention to investigate and possibly seek costs to clean up the site.  For purposes of

the instant motion, the parties agree that the NYDEC's letter is the "underlying

complaint," against which Plaintiff seeks to have the defendant insurance companies

provide a defense.

Subsequent to receiving NYDEC's letter, Plaintiff commenced the subject action,

3

seeking, *inter alia*, to have the defendant insurance companies defend and indemnify it in the proceedings brought by the NYDEC.  Plaintiff's complaint in this action contends that the contamination identified by the NYDEC "was caused by discharges and releases . . . *including* the dumping . . . of contaminants into a dry well . . . located near the back door of the building on the property." (Complaint ¶ 2) (emphasis added). However, the complaint fails to allege any other cause for the contamination besides the intentional dumping of contaminants into the dry well.  For example, under the heading in the complaint entitled "DISCOVERY OF THE CONTAMINATION," the complaint states that the subject contamination was discovered in "a Dry Well, . . . just a few feet outside the back door of the Building," which the previous owners had concealed from Plaintiff. (Id. ¶ ¶  64, 71).  Further, under the heading in the complaint entitled "THE CAUSE OF THE CONTAMINATION," the complaint states that the subject pollution occurred "[a]s the direct and proximate result of the Dumping of Contaminants into the Dry Well." (*Id*. ¶ 72).  Additionally, the complaint alleges that "[e]mployees of Clark Witbeck dumped contaminants in the dry well, including PCBs, TCA and other VOCs, SVOCs, acetone, and petroleum (including xylene or other petroleum constituents), throughout its occupation of the property, upon information and belief beginning in the 1960s through 1992, or during part of that time." (Id.  ¶ 74).

The parties subsequently filed seven separate motions for summary judgment, including:

> 1) a summary judgment motion by Plaintiff against Glens Falls, Continental, and Firemen's [#122], in which Plaintiff sought a declaratory judgment that these insurance companies have a duty to defend Plaintiff against the various counterclaims in this action; and

2) a summary judgment motion by Glens Falls, Continental, and
Firemen's against Plaintiff [#139], in which the insurance companies
sought a declaratory judgment that they have no duty to defend Plaintiff.

By Decision and Order [#165] filed on August 9, 2005, the Court denied Plaintiff's

motion and granted summary judgment to Glens Falls, Continental, and Firemen's. In

its Decision and Order, the Court explained that Plaintiff could attempt to prove that

Defendants' have a duty to defend, using either the underlying complaint, that is, the

NYDEC letter, or through extrinsic evidence. Plaintiff, however, relied solely on the

allegations in the underlying complaint, and produced no extrinsic evidence of a sudden

and accidental event.

Consequently, in granting summary judgment for the insurers, the Court

explained its reasoning as follows:

Here, the policies . . . exclude coverage for environmental contamination,
unless it was "sudden and accidental." Specifically, the policies state:

This insurance does not apply:
***
to bodily injury or property damage arising out of the
discharge, dispersal, release, or escape of smoke, vapors,
soot, fumes, acid, alkalis, toxic chemicals, liquids or gases,
waste materials or other irritants, contaminants, or pollutants
into or upon land, the atmosphere or any water course or
body of water, but this exclusion does not apply if such
discharge, dispersal, release or escape is sudden and
accidental[.]

Document [#129-9]. The terms "sudden" and "accidental" in this context
have well-settled meanings. "For a release or discharge [of pollutants] to
be sudden, it must occur over a short period of time." *Ogden Corp. v.
Travelers Indem. Co.*, 924 F.2d [39, 42 (2d Cir. 1991)]. Contamination is
not sudden when it occurs over a period of years. *Id.* ("[T]he allegation of
continuous discharge of pollutants from 1950 through 1983 cannot be
interpreted as an allegation of sudden discharge.").

On the other hand, "the contamination of a site is accidental when the

conduct, the activity resulting in pollution, was unintended." *Ogden Corp. v. Travelers Indem. Co.*, 924 F.2d at 42.  Consequently, contamination is not accidental when the discharge is intentional. *Northville Indus. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 89 N.Y.2d 621, 631, 657 N.Y.S.2d 564, 567 (1997) ("[T]he term 'accidental' excludes any intentional discharge of a pollutant from qualifying for the exception."); *Technicon Elec. Corp. v. American Home Assurance Co.*, 74 N.Y.2d 66, 544 N.Y.S.2d 531 (1989) (Holding that the intentional dumping of pollutants is not 'accidental' within the meaning of the pollution exclusion); *see also*, *Ogden Corp. v. Travelers Indem. Co.*, 924 F.2d at 42 ("It is doubtful whether the continuous discharge of pollutants resulting from the purposeful operation of a scrapyard can be construed as accidental."). Moreover, the exclusion applies only when the contamination is *both* sudden and accidental. *Id*. ("The sudden and accidental exception to the pollution exclusion clause applies only when the discharge is both 'sudden and accidental.'").

In the instant case, the complaint alleges that Clark Witbeck's employees intentionally dumped pollutants into a concealed dry well over a period of approximately thirty years.  The Court finds, as a matter of law based on the record in this action, that this alleged contamination was not "sudden." For this reason alone, Glens Falls, Continental, and Firemens' have no duty to defend[.]  Additionally, however, the Court finds, based on the factual allegations in the complaint, that the alleged contamination was also not "accidental."  Although Plaintiff included in the complaint an allegation that the contamination was "sudden and accidental," this conclusory assertion is insufficient to trigger a duty to defend where the specific factual allegations clearly allege that the contamination was intentional.  Notably, none of the persons who were involved with the property during the years in question, such as Plaintiff, Brodie, or Goodrich, has come forward with any proof that the pollution was sudden and accidental.  Nor, do the counterclaims make any factual allegations of sudden and accidental contamination.

(Decision and Order [#165] pp. 14-16) (footnote omitted).

Plaintiff subsequently filed the subject motion for reconsideration, based upon newly-discovered evidence of pollution on the premises, located some distance away from the dry well.  By Decision and Order [#225] filed on February 26, 2007, the Court permitted Plaintiff to "conduct further discovery concerning the cause of the newly-

discovered pollution." Plaintiff then deposed and/or obtained affidavits from several former employees of Clark Witbeck, and obtained an affidavit from an environmental scientist. Basically, this additional evidence establishes the following facts concerning the cause of the newly-discovered contamination: 1) Over at least two decades, Clark Witbeck distributed "cutting fluids" or "cooling fluids," containing PCBs, which it purchased in 5-gallon pails and 55-gallon steel drums; 2) over a period of years, Clark Witbeck employees dumped drums of unneeded or discontinued cutting fluid into the dry well;[1] 3) occasionally, the drums of cutting fluid, which were kept inside the building, developed leaks, and employees would attempt to plug the leaks and/or transfer the contents of the drum into a new drum; 4) approximately six 55-gallon drums were discarded behind the building at some time during Clark Witbeck's tenancy; 5) there was a "drainage swale" along the back of the building, leading from the dry well to other parts of the property; and 6) on occasion, precipitation caused the contents of the dry well to overflow and spread above the ground to other areas of the property.

Following the submission of Plaintiff's extrinsic evidence, the parties submitted additional legal memoranda. The Court, having thoroughly considered the parties' written submissions and the arguments of counsel, now denies Plaintiff's application for reconsideration.

ANALYSIS

Plaintiff brings the subject motion pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. It is well settled that when making such a motion,

---

[1] Deposition of Ron Spinelli at 22, 25.

the moving party must show that the Court overlooked the controlling decisions or factual matters that were put before the Court in the underlying motion. *Nakano v. Jamie Sadock, Inc.*, No. 98 Civ. 0515, 2000 WL 1010825, at *1 (S.D.N.Y. July 20, 2000); *Walsh v. McGee*, 918 F.Supp. 107, 110 (S.D.N.Y.1996). However, in addition, "[a] court is justified in reconsidering its previous ruling if: (1) there is an intervening change in the controlling law; (2) new evidence not previously available comes to light; or (3) it becomes necessary to remedy a clear error of law or to prevent obvious injustice." *See Nnebe v. Daus*, No. 06 Civ. 4991, 2006 WL 2309588, at *1 (S.D.N.Y. Aug. 7, 2006). New evidence, for these purposes, must be evidence that "could not have been found by due diligence." *Word v. Croce*, No. 01 Civ. 9614, 2004 WL 434038, at *4 (S.D.N.Y. March 9, 2004).

These rules are "narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the court." *See Walsh*, 918 F.Supp. at 110. Strict application of these rules also "prevent[s] the practice of a losing party examining a decision and then plugging the gaps of the lost motion with additional matters." *Polar Int'l Brokerage Corp. v. Reeve*, 120 F.Supp.2d 267, 268-69 (S.D.N.Y. 2000). The moving party may not use a motion for reconsideration to advance new facts, arguments, or theories that were available but not previously presented to the Court. *See Graham v. Sullivan*, No. 86 Civ. 163, 2002 WL 31175181, at *2 (S.D.N.Y. Sept. 23, 2002); *Leonard v. Lowe's Home Ctrs., Inc.*, No. 00 Civ. 9585, at *2 (S.D.N.Y. April 12, 2002).

*U.S. v. Billini*, No. 99 CR. 156(JGK), 2006 WL 3457834 at *1 (S.D.N.Y. Nov. 22, 2006).

A district court's decision to deny a motion under Rule 59(e) is reviewed on appeal for abuse of discretion. *See Munafo v. Metro. Transp. Auth.*, 381 F.3d 99, 105 (2d Cir. 2004).

Plaintiff seeks reconsideration of that portion of the Court's Decision and Order [#165] which found that Glens Falls, Continental, and Firemen's have no duty to defend Plaintiff from the claim by the NYDEC, because of the pollution exclusion.  The law of New York state concerning an insurer's duty to defend, when the pollution exclusion is at issue, is well settled:

Once an insurer has satisfied its burden of establishing that the underlying complaint alleges damages attributable to the discharge or release of a pollutant into the environment, thereby satisfying the basic requirement for application of the pollution coverage exclusion provision, the burden shifts to the insured to demonstrate a reasonable interpretation of the underlying complaint potentially bringing the claims within the sudden and accidental discharge exception to exclusion of pollution coverage, or to show that extrinsic evidence exists that the discharge was in fact sudden and accidental.

*Northville Industries Corp. v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 89 N.Y.2d 621, 634, 679 N.E.2d 1044, 1048-1049, 657 N.Y.S.2d 564, 568 - 569 (1997) (citations and internal quotation marks omitted).  Thus, the insured can satisfy its burden either through the underlying complaint, or through extrinsic evidence.  In its prior Decision and Order [#225], the Court found that Continental, Glens Falls, and Firemen's had met their burden under *Northville*.  Further, the Court found that Plaintiff could not satisfy its burden under *Northville* by relying upon the allegations in the underlying NYDEC complaint.  Consequently, the only issue remaining is whether Plaintiff has come forward with extrinsic evidence that the subject discharge of pollution was both sudden and accidental.  The Court finds that Plaintiff has not done so.

As the Court previously held, Plaintiff cannot rely upon evidence of pollution having to do with the dry well, since such contamination was neither sudden nor accidental.  While agreeing that coverage for pollution in and around the dry well is excluded, because it was not "sudden," Plaintiff suggests, nevertheless, that contamination at other points on the property, caused by overflow from the dry well, was unintentional, and therefore "accidental."  According to Plaintiff, "the dry well was perceived as a final resting place for the waste, and the dumpers did not intend widespread pollution across the property.  Otherwise, there would have been no need

9

to use the dry well, and waste could have been scattered across the property."
(Plaintiff's Memo of Law [#241] at 8).  Additionally, Plaintiff contends that such
contamination was sudden, because the overflow of the dry well may have been
caused by a sudden event such as a rainstorm.  In short, Plaintiff argues that the dry
well is akin to a sealed storage tank that leaked suddenly and unexpectedly.

The Court rejects this argument.  To begin, it remains undisputed that Clark
Witbeck employees intentionally dumped pollutants into the dry well.  Although Plaintiff
suggests that the escape of any pollutants from the dry well was accidental, because
Clark Witbeck " perceived" the dry well "as a final resting place for the waste," this
argument lacks merit because it fundamentally misunderstands the nature of a dry well.
A dry well, by definition, is a device used to disperse liquid into the earth. *See, e.g.*,
MERRIAM-WEBSTER ONLINE DICTIONARY[2] (Defining a dry well as "a hole in the ground
filled with gravel or rubble to receive drainage water *and allow it to percolate away*.")
(emphasis added); *see also*, INFOPLEASE ONLINE DICTIONARY[3] (Defining a dry well as "1.
a drainage pit line with loose stonework *for the leaching of liquid wastes*. 2. See
absorbing well.") (emphasis added).  In other words, a dry well is the very opposite of a
sealed storage container, which fact is not diminished merely because some of the
pollutant remained in the pit at the time of its discovery.[4]  Consequently, because the

---

[2]http://www.merriam-webster.com/dictionary/drywell

[3]http://www.infoplease.com/ipd/A0417480.html

[4]Plaintiff contends, via the affidavit of its expert, S. Bruce Kohrn, that the dry well was "constructed of brick and concrete blocks" and "had a clay bottom." (Kohrn Affidavit at ¶ 36) The factual basis for this statement is unclear.  Even if the description of the construction of the dry well was true, however, there is no indication that the walls of the dry well were water tight.  To the contrary, the design of a dry well is just the opposite.  Moreover, it is undisputed that the subject dry well was basically an uncovered pit.

activity resulting in the pollution was intentional, the subsequent spread of the pollutants, due to the overflowing of the dry well, cannot be deemed accidental. *Ogden Corp. v. Travelers Indem. Co.*, 924 F.2d at 42 ("Under New York law, the contamination of a site is accidental when *the conduct, the activity resulting in pollution*, was unintended.) (Emphasis added; citations omited).  Further, the spread of the contaminants could not have been sudden.  According to the undisputed testimony of Ron Spinelli, for example, the area near the dry well was often flooded. (Spinelli Deposition at 23) ("[T]here was always a problem when it got wet back there, because this stuff would come to the top.  It would – actually, the well must have been filled and when it rained a lot it would come to the top."); (*see also, Id*. at 32) ("[W]hen it rained a lot, maybe in the springtime, it would come – it would come up and it would sort of like be foaming on the top surface around there.  Of course they couldn't do any kind of dumping or anything because it was just so much water back there . . . . [Y]ou couldn't even walk back there it was so wet.").

Alternatively, Plaintiff suggests that some of the newly-discovered contamination was caused by leaking drums, which were placed behind the building.  However, as Defendants correctly point out, there is no evidentiary proof in admissible form that leaking drums of cutting fluid were taken outside the building.  Instead, there is only the testimony of Monty Alberts, a former Clark Witbeck employee, which is based on hearsay from an unidentified source. (Alberts Deposition at 24) ("[I]t was kind of brought to our attention that at a time they called that area 'the pit.'  And if they had a leaking drum, they would put it out there.")  However, even assuming, *arguendo*, that Alberts'

statement was admissible, the contamination he describes would not be sudden or accidental, since it would have been caused by the repeated, intentional placement of leaking drums on the property over a long period of time.  Moreover, to the extent that Plaintiff suggests that contamination, caused by barrels leaking as they were being transported from the building to where they were discarded behind the building, was sudden and accidental, the Court finds that the argument lacks merit.

Finally, Plaintiff suggests that, since the drums may have begun to leak indoors, before being taken outdoors, the leaking cutting fluid should not be considered "pollution." On this point, Plaintiff cites *Kenyon v. Security Insurance Company of Hartford*, 163 Misc.2d 991, 626 N.Y.S.2d 347 (Sup. Ct. Monroe County 1993), for the proposition that, "some events which involve release of contaminants indoors do not trigger the pollution exclusion." (Plaintiff's Memo of Law [#241] at 5).  The *Kenyon* decision involved a condominium resident who was injured by carbon monoxide from a malfunctioning furnace.  The undersigned, then sitting as a New York State Supreme Court Justice, held that the complained-of carbon monoxide was not a "pollutant" within the meaning of the subject insurance policy.  However, the *Kenyon* decision did not turn on the indoor/outdoor nature of the release, as Plaintiff suggests, but rather, it turned on the nature of the contaminant, the manner of the release, and the expectations of the parties to the insurance contract. *Id*., 163 Misc.2d at 351, 626 N.Y.S.2d at 997-98. For example, the plaintiff In *Kenyon*, unlike Clark Witbeck, "did not generate or produce hazardous substances routinely in the course of his profession, nor did he dispose of toxic waste as a part of his business." *Id*.  Consequently, the *Kenyon* decision does not

12

support Plaintiff's argument.  Moreover, even if Plaintiff's legal argument was sound, there is no indication that any of the contamination complained of in this action resulted from an indoor release.  Instead, at most the evidence suggests that the complained-of contamination occurred because Clark Witbeck employees intentionally placed the leaking drums outdoors to leak.

CONCLUSION

For all of the foregoing reasons, Plaintiff's application [#166] for reconsideration is denied.

So Ordered.

Dated: Rochester, New York
        November 13, 2007

ENTER:


 /s/ Charles J. Siragusa_____
CHARLES J. SIRAGUSA
United States District Judge